(August 4, 1923.)

THOMAS RYAN, Appellant, v. OLD VETERAN MINING COMPANY, a Corporation, et al., Respondents.

[218 Pac. 381.]

CORPORATIONS — PROMOTER'S CONTRACT — ACTION OF STOCKHOLDER AGAINST DIRECTORS — FRAUD AND MALFEASANCE OF DIRECTORS— FIDUCIARY RELATION OF DIRECTORS TO STOCKHOLDERS—STATUTE OF LIMITATIONS—SUFFICIENCY OF COMPLAINT.

1. Ordinarily the corporation is the proper party to maintain an action for fraud, misfeasance or malfeasance of its officers. But where it appears that the officers whose acts are complained of are in complete control of the corporation, a stockholder may maintain the action.

37 Idaho.—40

2.   Directors of corporations act in a fiduciary capacity. They hold the corporate property in trust, and any attempt on their part to divert the use of such property to their personal profit or interest is a violation of the trust imposed by virtue of the office of director.

3.   The statute of limitations does not begin to run against an action based upon fraud until the plaintiff in the exercise of proper diligence discovers the facts constituting the fraud.

4.   *Held,* that the plaintiff in this case exercised due diligence in his endeavor to discover the state of facts constituting the fraud upon which his action is based.

5.   *Held,* that the complaint sets forth the time, manner and circumstances of the commission of the fraud alleged with sufficient particularity, and states a cause of action.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. A. H. Featherstone, Judge.

Action upon complaint charging defendant directors with conspiracy, fraud and malfeasance. Demurrer to complaint sustained. *Reversed* and *remanded.*

Isham N. Smith and Therrett Towles, for Appellant.

The directors of corporations stand in the relation of trustees to the corporation and its stockholders with reference to the corporate property, its assets and corporate affairs, and by reason of their fiduciary position the management of the corporate affairs and business of the corporation requires the utmost good faith. They are individually liable to the corporation for fraud, malfeasance or gross negligence, whereby its property is wasted, and stockholders deprived of dividends, or their shares depreciated or rendered valueless. (*Smith v. Rader,* 31 Ida. 423, 173 Pac. 970; 2 Thompson on Corporations, 2d ed., secs. 1267, 1268; *Bowerman v. Hamner,* 250 U. S. 504, 39 Sup. Ct. 549, 63 L. ed. 1113; *Horn Silver Mining Co. v. Ryan,* 42 Minn. 196, 44 N. W. 56; *Riley v.*

Publisher's Note.

2.   Liability of directors to corporation or stockholder for secret profits, see note in **Ann Cas.** 1917A, 238.

*Callahan Mining Co.*, 28 Ida. 525, 155 Pac. 665; *Pfirman v. Success Mining Co.*, 30 Ida. 468, 166 Pac. 216; *Hall v. Nieukirk*, 12 Ida. 33, 118 Am. St. 188, 85 Pac. 485; *Miner v. Belle Isle Ice Co.*, 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Frontier Milling & Elevator Co. v. The Roy White Co-op. Merc. Co.*, 25 Ida. 478, 138 Pac. 825.)

The defense of laches, on the ground that appellant, by inquiry, might have learned the facts relied on, and filed his complaint earlier, is not available to respondents, who occupied a fiduciary relation toward him and were under obligation to disclose to him such facts without inquiry; especially where the delay has worked no inequity to them; and appellant is not chargeable with knowledge of the affairs of the corporation to the same extent as are the officers and directors. (*Krohn v. Williamson*, 62 Fed. 869; *Wills v. Nehalem Coal Co.*, 52 Or. 70, 96 Pac. 528; 14 C. J., sec. 1285, p. 845; *Just v. Idaho Canal etc. Co.*, 16 Ida. 639; 133 Am. St. 140, 102 Pac. 381; *American Mining Co. v. Trask*, 28 Ida. 642, 156 Pac. 1136; *Montgomery Light Co. v. Lahey*, 121 Ala. 131, 25 So. 1006; *Tilden v. Barber*, 268 Fed. 597; 7 R. C. L., sec. 58, p. 79; *Baker v. Schofield*, 243 U. S. 114, 37 Sup. Ct. 333, 61 L. ed. 626; *Diamond v. Connolly*, 251 Fed. 234; *Pearsall v. Smith*, 149 U. S. 231, 13 Sup. Ct. 833, 37 L. ed. 713.)

This action is not barred by the statute of limitation, because it is based on fraud which was not discovered by appellant until shortly before the commencement of the action and the statute of limitations did not commence to run until appellant discovered the facts constituting the fraud. (C. S., sec. 6611, subd. 4; *Diamond v. Connolly, supra;* 2 Thompson on Corporations, sec. 1318; *Tarke v. Bingham*, 123 Cal. 163, 55 Pac. 759; *Hillock v. Idaho Title & Trust Co.*, 22 Ida. 440, 126 Pac. 612, 42 L. R. A., N. S., 178; 12 C. J., secs. 182, 183, p. 612.)

A stockholder may in his own name sue in equity to enforce the liability of directors of a corporation for fraud, malfeasance or gross negligence, when the corporation refuses, or the present directors in control are themselves an-

swerable, or have an identity of interest with the parties charged. (*Smith v. Rader, supra; Just v. Idaho Canal & Imp. Co., supra; Wills v. Nehalem Coal Co., supra.*)

C. W. Beale, for Respondents.

The third amended complaint does not state facts sufficient to constitute conspiracy, fraud or unlawful conduct. (*Nelson v. Hudgel*, 23 Ida. 327, 130 Pac. 85; *Frank v. Davis*, 34 Ida. 678, 203 Pac. 287; *Van Weel v. Winston*, 115 U. S. 228, 6 Sup. Ct. 22, 29 L. ed. 384; *Ambler v. Choteau*, 107 U. S. 586, 1 Sup. Ct. 556, 27 L. ed. 322; C. S., secs. 4752, 5435.)

The third amended complaint does not allege any conspiracy. (*Pettibone v. United States*, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. ed. 419.)

Appellant cannot plead ignorance as to the organization of the respondent mining company, or as to any of the acts or things complained of in his third amended complaint, because it appears therein that such organization and such acts and things all became matters of record, either public or corporate, within his knowledge, or which he was bound to know. (Morawetz on Private Corporations, sec. 591; *Frank v. Davis, supra; Stout v. Cunningham*, 33 Ida. 464, 196 Pac. 208.)

Appellant was guilty of the grossest laches in not commencing this cause sooner, and has not shown any excuse for his delay, or that he could not have forced an earlier examination of the books and records of the respondent mining company, and is barred from maintaining this cause by such gross laches. (*Olympia Mining & Mill. Co. v. Kerns*, 24 Ida. 481, 135 Pac. 255; *Kelly v. Dolan*, 233 Fed. 635, 147 C. C. A. 443.)

McNAUGHTON, District Judge.—This suit was commenced September 30, 1919. It is an action by plaintiff, a shareholder of Old Veteran Mining Company, against F. H. Harper and the directors of the company charging Harper

and the directors with unlawfully conspiring and agreeing together to do, and doing, certain acts and things therein set forth for the purpose of cheating and defrauding plaintiff out of certain mining claims and rendering his stock in the corporation worthless, and cheating and defrauding the corporation out of a large amount of money and a large number of its shares of corporate stock. Plaintiff asks that a receiver be appointed, that 300,000 shares of the stock issued to Harper and the directors be declared to have been issued without consideration and canceled and surrendered to the company, or that plaintiff have judgment for the par value of the same with interest for the use of the corporation; that the directors be ousted from office and that all defendants be required to account to plaintiff, for the company, for all moneys collected by them as such officers.

Defendants demurred generally, and on the ground that the cause was barred by the statute of limitations, also specially on the ground that the complaint is indefinite and uncertain.

The pleadings, both complaint and demurrer, are voluminous, setting forth matter relied upon with much particularity, but the gist of plaintiff's claim is that on January 6, 1915, plaintiff and Charles Eckel were the owners of certain mining claims hereinafter referred to, together with cabins, fixtures, mining machinery and tools situate thereon, upon which claims there was on said date more than $15,000 worth of development work performed; that on said date plaintiff and Eckel entered into an agreement with F. H. Harper, wherein, after describing the seven mining claims and reciting that first parties were desirous of selling same and second party was desirous of purchasing them, it was agreed that party of the second part would form a corporation with a capital stock of $150,000 divided into shares of the par value of ten cents each; that upon the organization of the corporation first parties would convey to the corporation said mining claims in consideration of 200,000 shares of non-assessable stock in said corporation, and $4,140 payable in

instalments, said payments to be secured by mortgage on the claims.

That on February 25, 1915, defendant Harper, together with defendants M. J. Farrell and L. L. Brainard, executed articles of incorporation of Old Veteran Mining Company, which were shortly thereafter duly filed. The articles are made a part of the complaint, and it appears that G. H. Harper, M. J. Farrell, Allan G. Kennedy, Bert Farrell and L. L. Brainard were stock subscribers, each subscribing for one share of stock.

Article 8 of the Articles of Incorporation is as follows: "The said corporation is formed upon the basis of a conveyance to it by the owners thereof of the following named lode mining claims, situate, lying and being in the Lalande Mining District, County of Shoshone, State of Idaho, to wit: 'Idaho,' 'Knocker,' 'Never Miss,' 'Release,' 'Curry,' 'Gopher,' and 'Lifter' lode mining claims. And in consideration of the conveyance as above set forth it is expressly stipulated, understood and agreed, and the board of directors of this corporation may, by proper resolution, declare any of the capital stock of said corporation, issued in payment of said lode mining claims, or for any services rendered by others in securing title to said property, fully paid and non-assessable, and when issued, such certificates shall be so endorsed and shall thereafter be and are non-assessable."

The complaint sets forth that in furtherance of the conspiracy charged, defendants Kennedy, M. J. Farrell, Harper and Brainard, at a meeting on March 23, 1915, as stockholders representing four shares of the par value of ten cents each of the capital stock of the company, no other stock or person interested being represented and no other stock or person interested having been notified, adopted by-laws and elected themselves and B. J. Farrell directors; that they adjourned as stockholders and reconvened as directors, elected M. J. Farrell president, Allan G. Kennedy vice-president, L. L. Brainard secretary-treasurer, and M. J. Farrell manager, and received a proposal of F. H. Harper wherein he agreed to assign all his right, title and interest

in the agreement between himself and Ryan and Eckel, dated January 6, 1915, a copy of which was attached to the proposal, for 250,000 shares of fully paid nonassessable stock of the company, the company to assume an account due the United Stores Company for supplies advanced in the sum of $182, and to reimburse him for cash advanced to Ryan and Eckel in the sum of $100 and $100 advanced for labor, and agreeing in consideration of the acceptance of this proposition by the board to contribute 150,000 shares of the stock received by him for the purpose of defraying the expenses of incorporation and flotation of said corporation.

That thereupon as directors and as stockholders, defendants accepted said offer; that said defendants directed the president and secretary to carry out, on behalf of the corporation, the Ryan and Eckel agreement; that they also caused 250,000 shares of stock of the company, denominated as fully paid and nonassessable, to be issued to Harper, and agreed to and with each other that 150,000 shares thereof should not be returned to the treasury of the company by said Harper, but that the same should be and was divided among themselves, 50,000 shares each, to Allan G. Kennedy, M. J. Farrell and L. L. Brainard; that certificates of the company evidencing such stock were issued, and the said defendants assumed, and still assume, to be the owners and holders thereof.

The complaint charges that no part of the stock so issued to F. H. Harper and by him retained, or any part of that transferred by Harper to Kennedy, Farrell and Brainard, was issued for labor, services, property, money or other thing of value whatever flowing to the corporation or to plaintiff.

The complaint sets forth that after this meeting, but without knowledge of said acts of defendants, plaintiff and Eckel conveyed the property set forth in the original agreement to the corporation, and that he and Eckel received a mortgage and stock in the company as provided in the agreement, believing that the only outstanding fully paid and nonassessable stock was this 200,000 shares issued pursuant to said

agreement. That after the transfer of the mining claims the defendant Ehrenberg, with knowledge of said acts complained of by plaintiff relating to the issuance to defendants of the 250,000 shares without consideration, entered the conspiracy and procured an additional 50,000 shares denominated as fully paid and nonassessable, on the pretext that it was in payment of services rendered, and to be rendered to the corporation, but stating the fact to be that Ehrenberg had rendered no services whatever of value to the corporation, and that any services rendered by Ehrenberg were in behalf of the defendants other than the corporation and for the purpose of aiding himself and his co-conspirators.

That thereafter on February 7, 1916, defendants M. J. Farrell, Allan G. Kennedy and L. L. Brainard pretended to elect said Ehrenberg a director in the company in the place of Harper who had resigned as director; that Ehrenberg has since acted as a director.

It is alleged that a large amount of the stock of the corporation was sold to various persons on a payment of two mills per share; that at regular intervals the said directors levied assessments of two mills per share on all the stock issued except the 200,000 shares issued to plaintiff and Eckel and the 300,000 shares issued to themselves, and from July 31, 1915, up to and including July 5, 1919, pretended to sell certain stock in said corporation belonging to various persons who, they claimed, were delinquent in their assessments, and in great detail alleges that while many of the assessments were paid, many were not; that much of the stock was sold on account of assessments, but that they failed and refused to sell or collect assessments on stock belonging to themselves or their friends which was similarly situated and equally subject to said assessments as the stock which was sold by them.

It is alleged that a large amount of money was collected from said stock sales and assessments and that said sum of $4,140, the mortgage indebtedness due plaintiff and Eckel, given under the terms of their contract, has been paid in full.

The complaint in great detail charges the making and carrying of false entries in the books of account of the company, exorbitant salaries, and other alleged irregularities.

The demurrer first challenges the sufficiency of the complaint to state a cause of action. In this behalf counsel for defendant states: "The only consideration to be received by the appellant Ryan and by Charles Eckel for the transfer of their lode mining claims to the corporation, to be organized under the terms of the agreement, was 200,000 shares of nonassessable stock and the aggregate sum of $4,140. Impliedly at least from the terms of this agreement, Harper was entitled to all the remainder of the 1,500,000 shares of stock of the corporation provided for in the agreement, and it was no concern of the appellant Ryan what disposition was to be made of said stock so long as he received his portion of the 200,000 shares of nonassessable stock and of the $4,140 provided for in the agreement." If the allegations of the complaint are true it would seem that the defendants acted upon this theory. This position is not tenable.

By the agreement pursuant to which the corporation was formed, Harper agreed to form a corporation having a capital stock of $150,000 divided into 1,500,000 shares, and for the mining claims plaintiff and Eckel were to receive 200,000 shares, or two-fifteenths of the authorized stock, which was to be fully paid and nonassessable, and $4,140. By virtue of the ownership of the stock, they would at all times have an interest in all the property of the company, its treasury stock and its mining claims or other property.

C. S., sec. 4728, provides in part: "No corporation shall issue any stock as paid up, in whole or in part, or credit any amount, assessment or call as paid upon any of its stock, except for money, property, labor or services, actually received by the corporation, or actually paid upon the indebtedness of the corporation, as provided in this section, to the full value of the amount credited upon such stock."

C. S., sec. 4752, provides in part: "When any corporation shall issue stock or bonds for labor done, services performed or property actually received, the judgment of the directors

of such corporation as to the value of such labor, services or property shall, in the absence of fraud in the transaction, be conclusive.''

If the 300,000 shares of fully paid and nonassessable stock issued to the officers was in fact issued without any consideration whatever, but only in furtherance of the alleged conspiracy, it was illegal, and the allegations of the complaint are sufficient to tender an issue on that point.

Ordinarily the corporation is the proper party to maintain an action for fraud, misfeasance or malfeasance of its officers. But where it appears that the officers whose acts are complained of are in complete control of the company, a stockholder may maintain the action. (*Smith v. Rader,* 31 Ida. 423, 173 Pac. 970; *Riley v. Callahan Mining Co.,* 28 Ida. 525, 155 Pac. 665.)

It is contended by the defendants that plaintiff was not a shareholder at the time of the issuance of the nonassessable stock complained of.

By the articles of incorporation it appears that the basis on which the corporation was organized was to take over these mining claims, and a copy of the Ryan-Eckel agreement with Harper was attached to the proposal pursuant to which the Harper nonassessable stock was issued. Harper was the promoter. The Ryan-Eckel agreement with him and their subsequent conveyance of the claims to the company pursuant to the agreement constituted the basis of the corporation. In causing the title to these claims to vest in the corporation he and these directors selected by him were doing only what he had obligated himself to do.

In the case of *Olympia Mining & Milling Co. v. Kerns,* 24 Ida. 481, 135 Pac. 255, this court disposed of a somewhat similar point as follows:

''Appellant's whole argument and brief depends upon the assumption that the appellant corporation is a person, and the cause of action only arose when that person came into being by Cunningham and his associates organizing it. But the fact is, it was their duty, under the original contract, to

have organized the plaintiff corporation at least as early as 1904.

"It is stated in Morawetz on Private Corporations, sec. 227, that 'A corporation is really an association of persons, and no judicial *dictum* or legislative action can alter that fact.' And 'in equity the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest. . . . . In equity the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice; at law this relationship is not recognized at all.' (See, also, 1 Thompson on Corporations, 1st ed., sec. 10.) An incorporated company is nothing more or less than an association of individuals acting as a single person by their corporate name."

When the Harper proposal was accepted Ryan and Eckel became equitable stockholders, and plaintiff in the absence of knowledge of this alleged secret agreement has cause of action.

Where, however, an action such as this has been delayed beyond the statutory period as to the most important charge of the complaint and the plea of the statute of limitations is interposed, the complaint and the issue raised by the plea should be carefully examined. Subd. 4 of C. S., sec. 6611, provides that an action for relief on the ground of fraud or mistake may be begun within three years, and that the cause of action in such case must not be "deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." In this class of cases the rule is sound when applicable, which was announced by the federal supreme court in *Wood v. Carpenter*, 101 U. S. 135, 25 L. ed. 807, and adopted by this court in *Stout v. Cunningham*, 33 Ida. 464, 196 Pac. 208, as follows:

"In cases of this character the plaintiff is held to stringent rules of pleading. . . . . , and especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether by ordinary diligence the discovery might not have been be-

fore made. This is necessary to enable the defendant to meet the fraud and the time of its discovery. A general allegation of ignorance at one time and knowledge at another are of no effect. If the plaintiff made any particular discovery it should be stated when it was made, what it was, how it was made, and why it was not made sooner."

In subdivision 26 of the complaint it is alleged: That defendant Brainard was and has been director, also secretary and treasurer of the company since its formation, and kept all the books of the company, and continuously up to June 15, 1919, kept all knowledge and means of knowledge of the facts set forth in the complaint from the plaintiff and refused to permit plaintiff to inspect the books and records of the company. That after repeated demands in July, 1919, plaintiff was refused permission to examine the books except in the night-time. That plaintiff resorted to the court and sued out a writ of *mandamus* in the district court on August 5, 1919, compelling the defendants in said action to grant a reasonable inspection at reasonable times or show cause before the judge of said court why they should not do so. That defendants consented to an examination on August 20, 1919, and that a public accountant completed such examination on plaintiff's behalf on September 3, 1919. That said examination was the first accorded plaintiff, and from said inspection plaintiff learned for the first time of the issuance of said 300,000 shares of stock to defendants Harper, Kennedy, Brainard, M. J. Farrell and Ehrenberg, and other matters set forth in the complaint.

Directors of corporations act in a fiduciary capacity. They hold the corporate property in trust, and any attempt on their part to divert the use of such property to their personal profit or interest is a violation of the trust imposed by virtue of the office. (*Riley v. Callahan Mining Co., supra.*) Viewing these allegations of the complaint in the light of this situation we cannot say the failure to earlier discover the fraud complained of was due to the want of ordinary diligence on the part of this stockholder. Also the complaint

sets forth the time, manner and circumstances of the discovery in sufficient detail.

Treating these allegations of the complaint admitted, in so far as well pleaded, the plaintiff is within the statute and the demurrer should have been overruled.

The complaint sets forth with minute particularity the facts relied upon and we believe the demurrer on the ground of uncertainty and ambiguity not well founded.

Upon careful examination we find that the complaint states a cause of action against defendants; that the plaintiff, under the circumstances set forth, may, as stockholder, maintain the action; that by his allegations he has brought his cause of action within the statute of limitations and that his complaint is not ambiguous or uncertain.

The judgment of the district court is reversed and the cause remanded, with instructions to the trial court to overrule the demurrer, to grant defendants permission to answer, and to proceed with the case upon the merits. Costs are awarded to appellant.

McCarthy, William A. Lee and Wm. E. Lee, JJ., concur.