BAILEY W. LANSDOWN v. THOMAS KIERNS and CITY OF JEFFERSON, Appellants.

Division One, March 7, 1924.

1. **SPECIAL TAXBILL:** **Cancellation:** **Previous Construction of Private Sewer.** The fact that the original proprietors from whom plaintiff purchased his lots constructed a sewer in the street in no way affects the right of the city to include said lots in a sewer district and to establish a district sewer therein, to be constructed by special taxbills against the property, where (1) said sewer was constructed under a resolution of the city council which recited that "should a sewer district be ordered wherein said property is located said proprietors agree not to protest against said sewer district being established" and (2) said sewer was not laid deep enough to drain the basements of houses on lots fronting the street.

2. ———: ———: **Laying Sewer on Private Property: Engineer's Decision.** In the absence of fraud and collusion, the laying of a part of a district sewer on private property does not authorize a cancellation of the taxbills, where the sewer was staked out and laid thereon by directions of the city engineer, and the contract provided that the plans and specifications were to govern and "any point which may arise shall be settled by the engineer, whose decision shall be final." Under such a contract, the engineer's decision is so far binding as to authorize the issuance of the taxbills, and to prevent them from being declared wholly void.

3. ———: ———: ———: **Prorata Reduction: Correction.** Sewer taxbills are not void simply because a part of a district sewer was laid on private property. The most the property owner can claim is a *pro rata* reduction in the taxbill upon a payment or tender of the balance, and even that he cannot have where the city at its own expense corrected the mistake of laying the sewer on private property, removed it, and re-constructed it in a public street, before the suit to cancel the taxbills was instituted.

4. ———: ———: **Cement of Sewer Joints: Cushions.** The taxbills cannot be canceled for failure to comply with that part of the contract requiring the joints of the sewer pipe to be properly cemented, and the pipes to be laid on six-inch material suitable for a cushion where the trench passed through solid rock, where there is no evidence that these specifications were not substantially complied with.

5. ———: ———: **Manholes.** The use of ordinary second-hand brick in the construction of manholes in the sewer, and the fact that they were not well cemented, will not justify a cancellation of the taxbills.

6. ———: ———: **Area Rule: Lots of Unequal Length and Declivity.** The fact that the lots on one side of the street in which the sewer was laid were twice as deep as those on the other side does not make an assessments of all the lots according to area invalid or unequal; and where the street was on a high ridge and the deep lots were level for about a hundred feet from the street, but from there on they sloped and declined rapidly towards a ravine and so far below grade that they cannot be drained by the sewer, still the assessment by area cannot be said to be unequal where the evidence does not satisfactorily show the relative areas on each side of the street that can be drained by it. In such case the law committed the question of the establishment of the district to the city council, and its ordinance is conclusive and cannot be assailed.

Headnotes 1 to 6: Municipal Corporations: 1, 28 Cyc. 1130; 2 to 5, 28 Cyc. 1060; 6, 28 Cyc. 1122, 1157.

Appeal from Cole Circuit Court.—*Hon. John G. Slate, Judge.*

REVERSED.

*T. S. Mosby* and *D. F. Calfee* for appellants.

(1)   The establishing of the sewer district and the location of sewers therein and the necessity thereof were legislative matters resting wholly within the discretion of the city council, and its reasonable exercise of such powers is not subject to judicial review.   Akers v. Kolkmeyer, 97 Mo. App. 520; Prior v. Buehler Co., 170 Mo. 439; McGhee v. Walsh, 249 Mo. 266; Johnson v. Duer, 115 Mo. 366, 376; Heman v. Schulte, 166 Mo. 409, 417; Meier v. St. Louis, 180 Mo. 391, 409; Heman v. Allen, 156 Mo. 534; Kansas City v. Richards, 34 Mo. App. 521; Moberly v. Hogan, 131 Mo. 19; Williams v. Eggleston, 170 U. S. 304, 311; Parsons v. Dist. of Columbia, 170 U. S. 45; Skinker v. Heman, 148 Mo. 355; 3 Dillon, Mun. Corp. (5 Ed.) sec. 1148; 4 McQuillin, Mun. Corp., sec. 1834, p. 3937; 2 Beach on Pub. Corp., sec. 1175; Sec. 8305, R. S. 1919; McMurry v. Kansas City, 283 Mo. 479, 493, 498.   (2)   The question as to whether plaintiff's property was benefited by the sewer was a legislative question determinable alone by the city council. Prior v. Buehler etc., 170 Mo. 439, 451; Meier v. St. Louis, 180 Mo. 391; French v. Barber Asphalt Pav. Co., 181 U. S. 339, 343; Spencer v. Merchant, 125 U. S. 345, 353; 2 Cooley on Taxation  (3 Ed.) p. 1172, note 1; 4 Dillon on Mun. Corp. (5 Ed.) sec. 1437, note 5; Shumate v. Heman, 181 U. S. 403; Heman v. Allen, 156 Mo. 534; McMurry v. Kansas City, 283 Mo. 479; 2 Beach on Pub. Corp., sec. 1175; Johnson v. Duer, 115 Mo. 366, 376; Heman v. Schulte, 166 Mo. 409, 416; McGhee v. Walsh, 249 Mo. 266, 283.   (3)   The constitutionality of the so-called "area rule" in computing assessments is not open to question:   McGhee v. Walsh, 249 Mo. 283; Prior v. Construction Co., 170 Mo. 448; Barber Asphalt Co. v. French, 158 Mo. 534, 547; Same case, 181 U. S. 324; Meier v. St. Louis, 180 Mo. 391, 408; Heman v. Allen, 156 Mo. 534; Webster v. Fargo, 181 U. S. 394; St. Joseph v. Farrell, 106 Mo. 437; Spencer v. Merchant, 125 U. S. 345; 4 Dillon, Mun. Corp. (5 Ed.) sec. 1436.   (4) Equity will not decree cancellation, where plaintiff fails to tender the amount reasonably and justly due.   Yeats

v. Ballentine, 56 Mo. 530; Barber Asphalt Paving Co.
v. Ullman, 137 Mo. 543, 570; Johnson v. Duer, 115 Mo.
366, 479; Arnold v. Hawkins, 95 Mo. 572; Overall v.
Ruenzi, 67 Mo. 203; Porter v. Paving & Construction Co.,
214 Mo. 1, 20; Marsh v. Richards, 29 Mo. 99, 105; Cream-
er v. Bates, 49 Mo. 523; Quest v. Johnson, 58 Mo. App. 54.
(5)   The defendants having shown a substantial com-
pliance with the contract, it was not necessary to prove
literal compliance in order to validate the tax bills.   Stef-
fin v. Fox, 124 Mo. 630, 635; Porter v. Paving & Construc-
tion Co., 214 Mo. 20; Whitworth v. Webb City, 204 Mo.
579, 603; Heman v. Girardi, 96 Mo. App. 231; Cole v.
Skrainka, 105 Mo. 303, 309; 4 Dillon, Mun. Corp. (5 Ed.)
sec. 1467, p. 2631.   (6)   In the absence of fraud or collu-
sion, acceptance of the work by the city is conclusive.   28
Cyc. 1137, and notes 74, 75; 28 Cyc. 1185, note 24; 4
Dillon, Mun. Corp. (5 Ed.) sec. 1465.

*Dumm & Cook* and *W. C. Irwin* for repondent.

(1)   In a suit in equity, this court will defer to the
finding of the chancellor who heard the cause; and while
this court will weigh the evidence, it will not interfere
with the finding of a chancellor if there is substantial tes-
timony to support the same.   Daudt v. Steiert, 205 S. W.
225; Davies v. Keiser, 246 S. W. 900; Williamson v.
Frazee, 242 S. W. 962; McKinney v. Hawkins, 215 S.
W. 250.   (2)   There being substantial testimony in this
case that the sewer, for the payment of which the special
tax bills involved were issued, was not built in substan-
tial compliance with the plans and specifications, the
chancellor properly decreed the cancellation of the spe-
cial tax bill issued against plaintiff's property.   Heman
v. Gerardi, 96 Mo. App. 231, 235; City of Kirksville ex
rel. v. Coleman, 103 Mo. App. 215; King Hill Brick Mfg.
Co. v. Hamilton, 51 Mo. App. 120; Barton v. Kansas
City, 110 Mo. App. 31.   (3)   No tender was necessary.
Plaintiff's property was not connected with the sewer in

question, since he already had ample sewer facilities, and he therefore received no benefit from the sewer for the payment of which the special tax bills were issued. (4) The ordinance levying and assessing the tax for the payment of the sewer in Sewer District No. 26, and the tax bills issued under said ordinance, are invalid and void, as being violative of the Fourteenth Amendment to the Constitution of the United States, in that said tax bills are grossly unequal, and constitute a taking of plaintiff's property without due process of law. Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, overruling Schneider Granite Co. v. Gast Realty & Investment Co., 259 Mo. 153; Wetterau v. Trust Co., 226 S. W. 941; Ruecking Const. Co. v. Withnell, 269 Mo. 546; Commerce Trust Company v. Blakely, 274 Mo. 52.

SMALL, C.—Suit in equity to cancel district sewer tax bill against Lots 1 and 2, Block Two, General Realty Company's subdivision to Jefferson City, Missouri. Judgment for plaintiff, from which defendant, the contractor, appealed.

The petition, among other things, alleged that Sewer District No. 26, in which plaintiff's property is located, was established by ordinance of said city No. 2013, passed October 8, 1920. That thereafter, on the same day, October 8, 1920, another ordinance was passed by said city, No. 2014, for the construction of a district sewer in said District No. 26, which ordinance "declared it to be necessary for sanitary purposes and for the health and convenience of the residents of said city" that sewers be constructed in said District No. 26, and ordered the city engineer of said city to prepare plans and specifications and an estimate of the cost of the work, to advertise for bids for the doing thereof, and that the work should be awarded by the city council to the lowest and best bidder, and that the mayor of said city was authorized to enter into contract with the successful bidder. That the work should be done under the supervision of

the city engineer, and when completed he should compute the cost and apportion it against each lot in the district in proportion to the area of the whole district exclusive of highways. That in pursuance of said Ordinance No. 2014, the city engineer prepared plans and specifications and an estimate of the cost of the work and filed same in the office of the clerk. That the engineer advertised for bids, and on November 20, 1920, the city council accepted the bid of defendant Thomas Kierns, and on the same day said city, through the mayor, entered into a contract with defendant for the construction of said sewer, according to the plans and specifications, the bid of defendant being $11,226.27. That defendant undertook the construction of said sewer, and on February 7, 1921, the city engineer reported to the city council that said sewer had been completed according to the contract, plans and specifications, and that the total cost of said work amounted to the sum of $7544, which report was adopted and the work of constructing said sewer accepted by the city council by resolution of February 11, 1921. That said city engineer apportioned the cost against the lots in the district in proportion to the area of the whole district, exclusive of highways, and on February 11, 1921, the city council, by ordinance, levied a special tax against each lot in said district. On February 14, 1921, the city clerk issued special tax bills against each tract in the district, which were duly signed by the mayor and delivered to defendant Kierns in payment for the construction of said sewer. The one against the plaintiff's property was for $385.18.

The petition further alleged that said tax bills were a cloud on plaintiff's title, and were void for the following reasons:

That said Sewer District No. 26 was not necessary for sanitary purposes, nor for the health or convenience of the residents of said city, and that the party owners within said district already had ample facilities;

That said sewer was laid across private property without consent of owners or condemnation;

That a large part of said sewer had been dug up and cannot be used for sewer or any purpose;

That a large part of said sewer is laid on solid rock, contrary to the plans and specifications;

That the joints of said sewer are not cemented as required by the plans and specifications, and for that reason said sewer was useless;

That the manholes are not constructed of the material or in the manner to comply with the plans and specifications;

That no lamp holes are constructed at any point in said sewer as required by the plans and specifications;

That the cost of said sewer is excessive, prohibitive, is a confiscation of the plaintiff's property and the taking of the plaintiff's property without due process of law;

That said sewer cannot be used by plaintiff, nor by any of the property owners in said district;

That the plans and specifications for the construction of said sewer were violated in many other respects and the construction of said sewer has not been in any respect in substantial compliance with the plans and specifications.

The prayer of the petition is that said special tax bill be cancelled, set aside, and for naught held, and for all other and proper relief in the premises.

During the trial the court permitted the plaintiff to amend his petition by inserting the following paragraph: "That the ordinance of the City of Jefferson levying and assessing the tax for the payment of said sewer and the tax bills issued under said ordinance, are invalid and void as being violative of the 14th Amendment to the Constitution of the United States, in that said tax bills are grossly unequal."

Defendant first filed a general demurrer to the petition, which was overruled. Defendant then answered, admitting the passage of said ordinances for said sewer and all the proceedings thereunder, including the issue of the tax bills and the holding thereof by the defendant, as alleged in the petition. Said answer further as-

303 Mo. Sup.—6.

serted the validity of said tax bills, and alleged that defendant had fully complied with the plans and specifications in doing said work, and specifically denied each charge stated in the petition as a reason why said tax bills were invalid. The prayer of the answer was that plaintiff's petition be dismissed.

The evidence showed that said Sewer District No. 26 included certain real estate on each side of West Main Street, from Hub Street west for a distance of about 1300 feet. That all the lots on the north side were in said Blocks 1 and 2 of the General Realty Company's subdivision, and were each fifty feet front on said Main Street and extended north 370 feet to a thirty-foot alley. The lots on the south side were of varying frontage, the least being forty-seven and one-half and the greatest 150 feet, and they ran south for a distance of 194 feet. There is evidence also that there was an alley at the south end of these lots. Main Street runs east and west on the top of a ridge, and the land slopes sharply to the north and south, but there is perhaps one hundred feet, on an average, of the front part of the lots on the north side of the street which is on or above grade of the street and can be drained by the district sewer, but the remainder, or rear 270 feet, slopes north rapidly toward a ravine and is so far below grade that it cannot be drained by said sewer. It is in evidence that said lots on the south side of Main Street slope south rapidly into a ravine, and from all that appears in the record said sewer may not be capable of draining as much in area of said lots as of the lots on the north side of said street. There was no topographical survey or definite evidence on the subject. There are quite a number of houses on each side of said Main Street, but the exact number is not shown.

Said district sewer on Main Street is from six to eight feet below the grade of the street, and all the houses, including the basements, on the front part of all the lots on each side of said street may be drained by it. Prior to the construction of said district sewer the proprietors

of said Blocks 1 and 2 in said General Realty Company's subdivision, at their own expense, constructed a sewer in said Main Street which connected with a district sewer on the east. This sewer was two and a half to four feet below the grade of the street. When the lots in said Blocks 1 and 2 were sold there was about $125 added to the purchase price to help pay for this sewer. Owners of property on the south side of said Main Street were also permitted by the parties constructing it to connect with it by paying their proportionate share of its cost. A number of the lots on the south side, however, were not able to use said sewer at all, because it was not located at sufficient depth in the street. A few of the lots on the north side could drain their dwellings, including the basements, into this sewer, but the plaintiff and perhaps the majority of the lot owners on the north side could only drain their dwellings from the first floor up, and could not drain their basements into said sewer. This sewer was constructed by C. W. Thomas, who was then mayor of said city and who was also one of the owners, if not the sole owner, of said Blocks 1 and 2, under a resolution passed by the city council of said city, which read as follows: ''Resolved, that C. W. Thomas be and is hereby given permission to connect his property on West Main Street to the sewer in Sewer District No. 15, and that said connections be at the expense of the said C. W. Thomas, and that should a sewer district be ordered wherein said property is located the said C. W. Thomas agrees not to protest against said sewer district being established.'' It was constructed at the expense of said Thomas under the directions of the city engineer. It was sometimes flushed by the city employees, but no ordinance or resolution was ever passed taking it over as a public or district sewer. This sewer was an eight-inch vitrified clay pipe, the same as the district sewer in question.

There is evidence in the record that before the district sewer was constructed most of the sewage from the houses on the south side ran out onto the ground into the

ravine. Also that the sewers from some or all of the buildings on the north side emptied onto the surface in or near the alley at the north end of the lots.

None of the property owners in the district petitioned the city for said sewer in controversy or had any notice of the passage of any ordinances therefor. But some of the property owners verbally requested some of the aldermen to provide for such a sewer. The evidence shows that most, if not all, of the persons owning property on said West Main Street saw the work in progress and made no objections thereto until after it was completed and the taxbills were issued. At least the plaintiff made no such objection. The evidence, however, shows that the district sewer in question for a distance of 210 feet (one witness says about 350 feet) east of Hub Street, was laid diagonally across private property from a point on Hub Street southeasterly to a connection with the Sewer District No. 15, where the ordinance provided it should connect. The evidence shows that some time in the summer or fall of 1921, after the tax bills were issued, the owners of this property notified the city to remove the sewer from their property, as they had never given their consent to its location thereon. In pursuance of this notice, the city at its own expense removed said sewer from said private property and laid it south on Hub Street to McCarty Street, thence east about one block to Manilla Street to said connection with the public sewer in District No. 15. While, and before, this work was being done by the city, the contractor notified the mayor, and perhaps the street commissioner, that he himself would remove the sewer and relocate it in the public streets, but the city proceeded without expressly declining defendant's offer and completed it at the city's expense.

The city engineer in charge of the work was not a witness for either party. He seems to have been out of the State at the time. The contractor and several of his employees testified that they constructed said sewer across the private property under the direction of the city engineer. It was staked out for them across the

private property by the city engineer. That they had done all the rest of the work under and as directed by him. When the sewer across the private property was taken up it was found that only the top two-thirds of the joints was cemented, whereas the contract required them to be cemented all around. The defendant testified he did not know about that. But one or two of his workmen testified that the joints were properly cemented when the pipe was laid, but a rain came while the cement was soft and may have washed the cement out of the lower part of the pipe.

There was also expert evidence *pro* and *con* as to whether a sewer laid to the depth this sewer was would be materially affected if some of the joints were on solid rock and were not cemented at all at the time they were laid, because they would ultimately fill up and make a tight sewer. Several of defendant's workmen who laid the sewer in Main Street testified that it was all properly cemented, and where rock was encountered it was laid on a six-inch cushion of suitable material. That in blasting out the rock it necessarily came out irregularly and it was necessary to level up the bottom of the trench with soft material so as to lay the pipe on a straight line and to the required grade. That this was done.

Defendant's witness Rephlo, mayor when the sewer was built, testified that he saw the pipe exposed in Main Street testified to by the plaintiff's witnesses, and that it rested on soft material and not upon solid rock. He was corroborated by another witness or two. The soft material or sand seemed to be four to eight inches deep.

One of defendant's discharged employees was a witness for plaintiff and testified that he laid fifty feet of the sewer on Main Street, and laid it on solid rock without any cushion, and that the pipes were not cemented or swabbed as required by the contract. That they laid fifty feet of pipe at a stretch and then a man went down with cement "and just went right along there, you know, and jabbed them up; didn't swab any at all." The joints for the fifty-feet he laid were not cemented at the bot-

tom.   The foreman told him there should have been a six-inch cushion under the pipe where it was laid on rock, but "Mr. Kierns said it wasn't necessary; to just go ahead with it." That the manholes were mostly made of soft brick and brick bats, with a few paving brick.   This witness testified that he dug up the sewer where Mr. Rephlo and others saw it and it was on solid rock there, no cushion under it.

Plaintiff's witness Harding, an expert engineer, testified he dug down at two places on Main Street.   That the pipe was cemented on top, but could not tell whether it was on the bottom, but thought it might have been. In his report of such examination to plaintiff's attorneys he stated that he examined the sewer from the manholes with a flashlight, and saw about five joints, and they were well cemented and swabbed.   As to the three manholes he testified there was some soft brick in them.   That the bottom of the manholes was flat instead of sloping, and it was not raised two courses of brick on both sides of a channel, as required by the specifications.   That one of the manholes was well cemented, but the last seven courses of the brick on the other two were not plastered and some joints were apparently without any cement.   The flush tank called for by the contract was properly constructed.   Where he dug down in the two places on Main Street he found the bells or chimes of the pipe at one place two inches above, and at another seven inches above, solid rock, and the spaces underneath were filled up with fragments of sandstone, sand and clay. That pure sand makes a very good cushion.   He did not find the bells on rock anywhere.   He found the sewer was laid to the line and grade required by the contract.

Some property owners made an excavation in Main Street and uncovered the sewer for about six feet, or two pieces of pipe.   They testified they found the bells rested on solid rock.   There was loose sand or sand rock under the "barrel," but it did not reach to the bottom of the pipe.

The specifications required that solid rock should be taken out for six inches below the sewer pipe, which space should be filled in with suitable material for a cushion for the pipe to rest upon.

The sewer on Main Street was 1200 or 1300 feet long. It ran south at the east end along Hub Street (after the city took it off the private property and put it on Hub Street) about 400 feet, and then east 250 or 300 feet on McCarty Street, where it connected with the sewer in District No. 15. There is no evidence showing the cost of the sewer laid across the private property, nor of the expense to the city in taking it up and re-laying it on Hub Street and McCarty Street. But we may assume inasmuch as it must have been longer, the part re-laid cost as much as the part removed.

We are satisfied from the record that only one lamp hole was called for by the contract, and that was constructed as required.

The evidence shows that after and ever since the district sewer was completed up to the time of the trial it has operated satisfactorily and that several persons on both sides of the street had connected with it and were using it at the time of the trial.

There was evidence that some of the councilmen when they voted for the ordinance providing for the district sewer supposed it was to be located in the ravine south of the lots on the south side of Main Street, and that it was to be for the benefit of the property owners on that side of Main Street only. Some of the property owners also testified that they had heard the proposed new sewer was to be in this ravine. This evidence was admitted over the proper objection of the defendant.

There was also evidence that the city engineer suggested to another bidder a corrupt arrangement by which he and the engineer would divide the profits of the contract. This testimony was also duly objected to as not within the issues made by the pleadings, there being no fraud or collusion charged, but the court permitted the testimony, stating that he supposed the plaintiff would

amend his petition so as to charge fraud. But no such amendment was ever made. There is no evidence that the defendant was present when any such corrupt suggestion was made by the engineer or that he entered into any corrupt agreement with said engineer or any other person.

Defendant's bid for the work was $11,226.27, but that was made on the estimated quantity of rock excavation and number of manholes. Under the contract the work of rock excavation was to be paid for at a certain price per cubic yard, and the manholes at a certain price for each manhole, and there was less rock work done and fewer manholes required than the estimate. The result was defendant was allowed for the work $7375, or about $4000 less than his estimated bid.

At the close of the testimony the defendant offered and the court refused declarations of law to the effect that if the defendant substantially complied with his contract the finding would be for the defendant, and that before plaintiff could be entitled to a cancellation of the tax bill he would have to tender what was justly due. That if the work was done substantially according to contract it was immaterial whether plaintiff received any benefit therefrom. That the necessity for the sewer was a question to be determined by the city council and its determination was conclusive. There was no special finding of facts, but the court found the issues generally for the plaintiff, and decreed the cancellation of the tax bill as prayed.

I.   The fact that the original proprietors of plaintiff's property and from whom he purchased, constructed a sewer in said Main Street, in no way affects the right of the city to include said property in a sewer district and establish a district sewer therein to be constructed by the issue of special tax bills against it the same as in other cases. First, because said sewer was laid under a resolution of said city which stated that: "Should a sewer district be ordered wherein

**Private Sewer.**

said property is located the said C. W. Thomas agrees not to protest against said sewer district being established.'' Plaintiff is bound by the agreement made with the city by the person who constructed said sewer, and under whom plaintiff claims his rights in said property and said sewer. Second, the plaintiff himself admits that said Thomas sewer was not laid deep enough below the surface of the street to drain his basement. The evidence also shows there were other basements on the north side, and perhaps all basements on the south side of Main Street, which could not be drained by said Thomas sewer.

II. But it is strenuously argued that the evidence shows the contract for the district sewer in question was not substantially complied with, because part Sewer Laid of it east of Hub Street for 210 feet (one witon Private ness said 350 feet) to the connection with the Property. sewer in District No. 15, was laid on private property. The uncontradicted evidence is that the sewer was staked out over said private property and laid therein under the directions of the city engineer. The contract provided that the plans and specifications are to govern and ''any point which may arise shall be settled by the judgment of the engineer whose decision shall be accepted as final.'' By staking the sewer out over this private property and directing it to be laid there, the engineer decided that was the place to construct it, under the plans and specifications, and his decision was binding on both parties, in the absence of fraud and collusion, of which there is no proof or allegation. The engineer's decision was at least so far binding as to authorize the issue of the taxbills and prevent them from being wholly void. [Porter v. Paving Co., 214 Mo. l. c. 19.]

Besides, we have held that sewer tax bills are not void simply because a part of the sewer is constructed on private property. Johnson v. Duer, 115 Mo. 366, was a case in equity to cancel a sewer tax bill issued under the

legislative charter of Kansas City of 1875, which as to sewers was a replica of the charter of cities of the third class, to which Jefferson City belongs. In that case the district sewer, for which the tax bills were issued, at the end where it connected with another district sewer, as in this case, was laid by the contractor under the directions of the city engineer in private property for a distance of 195 feet. It was contended that this avoided the tax bills, but there being no fraud charged, as in this case, we held to the contrary, and that the most the plaintiff could claim under such circumstances was a *pro rata* reduction in his tax bills for the part constructed in private property. We said at page 381:

"What then would be an equitable disposition of this case? The contractor has done all he contracted to do in full compliance with plans, specifications and plats in the office of the engineer, and under the immediate direction and supervision of that officer. The work has been accepted by the city and it makes no complaint. Complainants and other property owners have a system of sewerage consisting of over 10,000 feet ready for use upon making a connection of 195 feet, which can be constructed by the city for an estimated cost of $1200. It is true the system is useless until it is opened through this private property or just (put) within the lines of the street as required by the ordinance, but this is through no fault of the contractor. The connection was made by him and approved by the city.

"Our opinion is that the property owners should pay the contract price for all the work except such part as is constructed through private property, and, until a proper proportion of the tax bill is paid or tendered, no injunction should be granted. [Miller v. Anheusser, 2 Mo. App. 168.]

"As far as the evidence in this record shows the fault or mistake was made by the city and the contractor, if he have a remedy for the work not paid for, must look to the city, unless the city secures the right to maintain the sewer over the property between its connection with

the sewer in District 82 and the point of its departure from Dora Street.''

But in the case before us the city recognized its fault and corrected the mistake itself, and at its own expense, as in equity and good conscience it should have done, removed the portion of the sewer on private property and located it in the public streets before this suit was instituted. So that when this suit was brought the property owners in the sewer district had a perfect sewer in full operation, and they are entitled to no reduction of the bills because of such corrected mistake and the contractor has no claim against the city, as suggested in the Duer Case he might have had had the city not corrected its error in causing him to lay the sewer on private property.

III. But it is said that the evidence shows the contract was not otherwise substantially complied with, in that the manholes were not constructed of the proper kind of brick and were not properly cemented, and the sewer pipes were not properly cemented where they were joined together, and they were not laid on six inches of material suitable for a cushion for pipe to rest upon where the trench was through solid rock, as required by the contract. Assuming the testimony of the plaintiff's engineer, Mr. Harding, to be true, as we do, we cannot conclude the evidence shows the contract was not substantially complied with. Nor can we find from all the evidence that any substantial part of the sewer was laid on rock without a proper cushion as required by the contract, nor that any substantial part of it was not properly cemented, except where it was laid on private property, and that portion was taken up and re-laid by the city in the public street and properly cemented, so that no harm was done by the failure to properly cement the part removed from private property and abandoned as part of the sewer.

As to the manholes: we believe they were made of second-hand ordinary brick and constructed and not well

cemented, as shown by the plaintiff's evidence. But we do not think, however, this was sufficient to justify us in holding the contract was not substantially performed. In Porter v. Paving Co., 214 Mo. l. c. 22, we said: "Neither would the fact, which the evidence for the plaintiff tended to show, that in some instances the joints of the pipe were not cemented in a workmanlike manner and that some of the manholes were not plastered properly, entitled plaintiff to a cancellation of the tax bills," and we held the contract was substantially complied with.

IV. But it is said that the ordinance establishing the sewer district was void because the lots were twice as deep on the north side as on the south side of West Main Street and the statute required the cost of the sewer to be apportioned in accordance with the area rule, and thus the owners of lots on the north side were taxed twice as much as on the south side of said street. That this was grossly unequal special taxation, contrary to the Fourteenth Amendment. This court has often held that the area rule for assessing special taxes for building sewers is not obnoxious to the Fourteenth Amendment. [McGhee v. Walsh, 249 Mo. l. c. 283, and many other cases cited by appellants' counsel.] But it is said that the Supreme Court of the United States has decided in the case of Gast Realty & Inv. Co. v. Schneider Granite Co., 240 U. S. 55, that: "An ordinance of St. Louis authorized by the charter of that city, based on area, without providing for equal depth of the assessment district, results necessarily, and not merely incidentally, in subjecting owners of property having greater depth than that adjoining them to greater and disproportionate taxation and is unconstitutional under the Fourteenth Amendment." But that case is to be distinguished from this case. In that case the charter itself provided for fixing the benefit district arbitrarily, and the ordinance followed the literal terms of the charter by reason of which the only private prop-

*Area Rule.*

erty in the benefit district and taxed on one side of the street was very close to it and on the other side it extended for half a mile from it. Besides, that was a street paving case. In the case before us this sewer district was established and fixed by the judgment and discretion of the city council with reference to the special benefit to be received by the particular parcels of land included within the benefit district. But in the Gast Case, as was said by this court in Wetterau v. Farmers & Merchants Trust Co., 285 Mo. 555, the benefit district was established "not because of special considerations applicable to the parcels taxed, but in blind obedience to a rule [of the charter] that requires the result." The same observation was made in Trust Co. v. Blakely, 274 Mo. 52. In the Gast Case the city council exercised no judgment whatever in determining the property which it deemed benefited by the proposed improvement, but in this case it did exercise its judgment and determine that the lots on the north side of Main Street, which were twice as large as those on the south side, should be included in the district, although under the law they would be taxed under the area rule twice as much as those on the south side. No injustice was *necessarily* done any of the property owners, as in the Gast Case. If all the property on the north side and all the property on the south side of Main Street was on or above grade and could have been drained by the sewer, no complaint of unequal taxation could have been made by the application of the area rule. The evidence does not satisfactorily show the relative areas of the lots on each side of the street which could be drained by the sewer. It may be that much more of the lots in area on the north side could be drained by it than on the south side. The law committed the decision of this question and the justice and expediency of said district to the city council, and in the absence of fraud or collusion, of which there is neither allegation nor proof, the ordinance establishing such sewer district is conclusive and cannot be assailed. [McMurry v. Kansas City, 283

Mo. 479; McGhee v. Walsh, 249 Mo. 283; Johnson v. Duer, 115 Mo. l. c. 376; Shumate v. Heman, 181 U. S. 402.]

The result is, the judgment appealed from is reversed and the cause is remanded to the circuit court with directions to enter judgment against the plaintiff and dismiss his petition. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* not sitting.