**Alvie OAKLEY, Plaintiff-Appellant,**

v.

**DUERBECK COMPANY, a Corporation, and Charles G. Duerbeck and Jessie F. Duerbeck, Defendants-Respondents.**

No. 49359.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Tom R. R. Ely, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, by G. W. Marsalek, St. Louis, for defendants-respondents.

WESTHUES, Judge.

This is an appeal to review the action of the Circuit Court of the City of St. Louis in entering a summary judgment against plaintiff-appellant in an action to recover $35,000 damages for personal injuries sustained when he fell on a common stairway on premises owned by the defendants-respondents.

Plaintiff Alvie Oakley alleged in his petition that he was a tenant of the defendants Duerbeck Company and Charles G. and Jessie F. Duerbeck at 4617 St. Ferdinand Avenue, St. Louis, Missouri; further, that on March 17, 1960, plaintiff fell down a

common stairway on said premises; that the defendants failed to comply with provisions of the Building Code of the City of St. Louis, Missouri, in not providing hand-railings on the steps and in not having a gutter at the edge of the roof above the porch and stairway; that water dropped from the roof to the steps and froze; that plaintiff fell on the ice and was injured.

Defendants answered denying the claim of negligence and charged that plaintiff was guilty of contributory negligence; defendants alleged further that plaintiff, on April 26, 1960, compromised and settled his claim for damages against the defendants by accepting $1700 and signing a release which discharged the defendants.

Plaintiff filed a reply admitting having been paid $1700 but alleged "that said $1,700.00 was not paid and accepted in full settlement of payment for the injuries sustained by plaintiff but was intended only as reimbursement of plaintiff's medical expenses, including doctor bill and hospital bill and nine weeks' lost earnings. Plaintiff, for further reply, states that both he and defendants were mutually mistaken as to the nature, character and extent of plaintiff's injuries; that plaintiff was informed by his doctor that he would be entirely well and his back entirely healed within eight or nine weeks and that plaintiff and defendants made said payment of $1,700.00 in reliance upon said opinion. Plaintiff further states that the amount paid was grossly inadequate and the execution of the release pleaded by defendants was based upon a mutual mistake in fact; that it developed that plaintiff was unable to return to work for a period of six months after the injury and that his injuries alleged herein developed and became apparent after the execution of said release. That plaintiff's medical expenses exceeded the amount allocated for same in said settlement and that he will have further medical expenses in the future.

"2. Plaintiff tenders to defendant the sum of $1,700.00 received under the release herein."

Plaintiff's deposition was taken and the same was filed in the trial court; by stipulation the deposition was filed in this court.

Under the state of the record, defendants filed a motion for summary judgment. The trial court sustained the motion and entered judgment. Plaintiff appealed to this court.

Plaintiff claims that he and the defendants' agent in negotiating a settlement were laboring under a mutual mistake of fact as to the extent of the injuries plaintiff had sustained. Plaintiff claims the evidence was such that a jury could so find and therefore the trial court erred in entering a summary judgment.

The precise question before us is whether the trial court was justified in entering judgment against plaintiff. To determine this, we look to the evidence before us and if it appears that there is any evidence to sustain a finding that the parties entered into a settlement agreement under a mistake of fact, the judgment should not have been entered. See S.Ct. Rule 74.04(c)(h), V.A.M.R., and 49 C.J.S. Judgments § 220, p. 388, and cases there cited.

Plaintiff's deposition with the evidence therein was before the trial court. In this deposition, plaintiff testified in detail as to the circumstances surrounding the settlement and the payment to him of $1700. Plaintiff's testimony was that a few days after he was injured and while in a hospital, Patrick E. Hickey, representing an insurance company, came to see him about plaintiff's fall; that Mr. Hickey informed him he was representing an insurance company; further, that plaintiff told Hickey that he did not have a lawyer and did not want a lawyer. "If me and him could get together, that there would be no attorney represent me. He said, well, he wanted to know if I was worrying about my bills, and so forth.

And, I said, 'At the present time, no.' He wanted to know something about my expenses, my ambulance bill, and my brace that I had on at the time. And, he said something about the * * * I don't know what you call it, reimburse some money on it, fix it some way where I wouldn't worry about it. He told me, 'When you get out of the hospital, you call me, and I don't want to worry you any more in the hospital.' At the time he said he didn't know that I had a fractured back.

"Q. Did you know it?

"A. Well, I know the doctors told me I did have."

Plaintiff was in the hospital about twenty days. Within a week after leaving the hospital, plaintiff called. Mr. Hickey and in response thereto, Mr. Hickey went to plaintiff's house and renewed negotiations for a settlement. Plaintiff testified that Hickey went out on the porch and looked around, then came in and "I said, 'Now, Mr. Hickey, I know you are an attorney, and I am just a dumb boy.' I said, 'You know whether you think I have got anything coming or not.' I said, 'I want to know what your opinion is to start with.' And, he wanted to know, he said, 'You don't have any lawyer?' I said, 'No.' And he said, 'Well, I will tell you this, Mr. Oakley.' He said, 'I will see * * * if you don't want to get an attorney, I will see that you are not out no money out of your pocket for expense.' "

Plaintiff testified further that he and Hickey figured the total expense incurred by reason of plaintiff's injuries and the total came to about $1700 including lost time from work which was estimated to be about nine weeks. According to plaintiff, Hickey told him he would inform his company of a proposed settlement and if he obtained the authority, the matter would be settled on the basis of about $1700 being the total expense. The settlement was finally reached on the third visit of Mr. Hickey to plaintiff. Plaintiff testified that his doctor had told him he would be back at work in eight weeks; that he would then be "physically as good as I ever was"; that before he settled for the $1700, he called the doctor and was told by him, " 'Well, make it nine. * * * Make it nine weeks.' " "So, that is what I did." The settlement was made on that basis, according to plaintiff.

Plaintiff further testified that he understood that by signing the release the insurance company and the defendants, Duerbecks, would be released from all liability.

Plaintiff makes no claim of fraud against Hickey. In fact, he testified that he and Hickey discussed the question of whether plaintiff should be paid something for his injury and pain. Note plaintiff's evidence on this subject: "Mr. Hickey also told me at the time I was settling, he said, 'The question of it was,' he said, 'whether you have a case, whether you can get the jury or not. I don't mind telling you, if you got you a lawyer, and you would get to a jury,' he said, 'you could get,' I believe he said, 'three or four times the amount I am paying you,' but, he said, 'the question is, whether you got a case to get a jury with it or not.' He told me at the time I settled.

"Q You understood that?

"A Well, I didn't know nothing about what it took to make a case.

"Q You understood what he said, you could get more than what he was paying you?

"A If I had a case to get to the jury, yes.

"Q And, there was also a possibility that you may get less?

"A Yes.

"Q You were satisfied with the amount, at that time?

"A At that time, yes."

Sometime after the release was signed plaintiff went to his doctor's office and

learned from the doctor that he would probably not be able to go to work for six months. Plaintiff testified that after he returned to work, he had trouble with his back and still had trouble at the time of the trial in the circuit court. Plaintiff, in his brief, says, " * * * the Affidavit of Patrick E. Hickey adds nothing to said contentions and the Deposition of Plaintiff and plainly shows that the parties were mutually mistaken as to the nature, character and extent of the Plaintiff's injuries and plainly shows that the Plaintiff was misled by his Doctor and so was Defendants' agent as to the time Plaintiff would be off work and both parties were mistaken as to the extent of Plaintiff's injuries because the Doctor said that his back would be as good as ever and it developed that plaintiff was seriously injured."

■ Plaintiff's evidence was that both he and Hickey knew that plaintiff had a fractured back. What plaintiff and Hickey did not know, and apparently plaintiff's doctor did not know, was whether plaintiff would fully recover from the injury he sustained. Was that mistake of fact such as authorizes the setting aside of a contract, in this case, the release? We find that under the law it is not. Jennings v. Metropolitan Life Ins. Co., Mo.App., 166 S.W.2d 339, is a case in point. We quote what was there said since it is appropriate to the facts now before us, l. c. 344(2–5): "We recognize the rule, invoked by plaintiff, that a mutual mistake as to the existence of a fact which goes to the essence of a contract will render the contract voidable where it later appears that such fact did not exist. But a mutual mistake in prophecy or opinion may not be taken as a ground for recission where such mistake becomes evident through the passage of time. What is today only a conjecture, an opinion, or a guess, might by tomorrow, through the exercise of hindsight,

be regarded then as an absolute fact." See also 17 C.J.S. Contracts § 144, p. 497.

Plaintiff cites the case of Goodman v. Missouri Pacific Railroad Company, Mo., 312 S.W.2d 42, in support of his contention of mutual mistake. The facts in that case were not similar to those in the case before us. Note what the court there said, l. c. 47 (2, 3): "We think the evidence hereinbefore reviewed was sufficient to support the submission of the issue of mutual mistake of fact. Under the circumstances shown, plaintiff's knowledge of some soreness and some aches and pains in his back was not the equivalent of knowledge of an injured disc or of a severe and permanent injury. Neither of the parties to the release knew that plaintiff had sustained an injury to an intervertebral disc between the 8th and 9th dorsal vertebrae as plaintiff's evidence tended to show."

In the case before us, plaintiff and Mr. Hickey knew at the time and before the release was executed that plaintiff's back was fractured.

Other cases cited by plaintiff, for example, Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347; Gottlieb v. Isenman, 1 Cir., 215 F.2d 184; and Chapman v. Hawthorne Flying Service, 5 Cir., 287 F.2d 539, announce no rule of law contrary to our holding in this case.

Plaintiff's evidence disclosed that he signed a release by which he settled his claim in full and discharged the defendants from further liability. Plaintiff's evidence shows further that he and Mr. Hickey executed the release with full knowledge that plaintiff had a fractured back and that the parties were not laboring under a mistake of fact as that term is understood in legal parlance.

The judgment is hereby affirmed.

All concur.