(No. 5518. November 29, 1930.)

W. W. PARISH, Appellant, v. ALFRED PAGE and SARAH PAGE, Respondents.

[293 Pac. 979.]

E. M. Wolfe and Frank L. Stephan, for Appellant.

Walters, Parry & Thoman and J. R. Keenan, for Respondents.

VARIAN, J.—Respondents are husband and wife and at one time owned all of section 36, township 9 south, of range 16, E. B. M., in Twin Falls county, which the evidence shows was a "short" section containing an area of 624.70 acres, 258.66 acres of which lie west of the center line of Rock Creek. Under date of November 20, 1917, they entered into a written agreement with appellant whereby they agreed to sell him "all of the land lying and being west of Rock Creek in Section Thirty-six (36), Township Nine (9) South, Range Sixteen (16) E. B. M., that lies west of the meanders of the creek and is marked by the center of the bed of the said creek, containing 250 acres more or less," for the sum of $50,000, payable in instalments.

Appellant brought this action in damages for fraud, alleging in substance that at the date of said agreement respondent falsely represented that there were 273.85 acres in said tract of land, with 273.85 shares of water stock in the Twin Falls 'Canal Company appurtenant thereto; and that 250 acres of said land were tillable and suitable for cultivation, which were then being, and for a number of years prior thereto had been, cultivated. It was also alleged that respondents exhibited to appellant a map showing the exterior boundaries of said land and the several fields into which it was divided, with the acreages thereof; that said lands were sold and purchased for the sum of $200 per acre for 250 acres, said acreage being represented as "tillable and suitable for cultivation"; that there were but 211.4 acres of tillable land in said tract, which was not discovered by appellant until August 25, 1926, when suit was brought

against him by the Burnett Brothers, to whom appellant sold the land; that the representations of respondents and the correctness of said map were relied upon by appellant, who demanded judgment for the amounts, principal and interest, paid by him because of such shortage upon said contract.

The answer denied all the material allegations of the third amended complaint, both as to the amount of land and the tillable area thereof, the falsity of the map, denying it was ever exhibited to appellant, and alleged that the land was sold for the flat price of $50,000, regardless of the number of acres contained in the tract. As separate affirmative defenses, respondents plead (a) a release and surrender by appellant of all rights under said contract dated November 20, 1917, by virtue of a written agreement dated April 1, 1924, entered into at a time when appellant was in default in his payments under the first-mentioned agreement, and a supplementary agreement entered into by the parties about March 2, 1923, changing the amounts of the instalment payments falling due under the original agreement, and by virtue of an express release contained in a written agreement dated October 10, 1925; (b) estoppel by reason of long delay in commencing the present action; and (c) that appellant's cause of action is barred by the statute of limitations (C. S., sec. 6611, subd. 4).

The cause was tried to the court without a jury, all of the issues being found in favor of defendants. Plaintiff appeals from the judgment.

The evidence is in direct conflict as to any false representations as to the quantity of land embraced in the tract sold, or the quantity of tillable land. Appellant concedes this, but argues that aside from the oral evidence the written documents in evidence conclusively show that said false representations were so made. With appellant's theory we cannot agree. The map showing parcels of land aggregating 250 acres on the west side of section 36, township 9 south, range 16 east, as found by the court upon ample evidence, was not exhibited to appellant until after the

contract was entered into. The map is silent as to whether the parcels are tillable land, or otherwise, and does not tend to support appellant's theory that it falsely represented the entire tillable area as 250 acres, and so does not constitute a continuing representation that such was the case. The map shows the territory west of Rock Creek blocked off into fields whose easterly boundaries apparently terminate in a traverse line along the rimrock adjacent to the bank of said creek. The surveyor, in lettering in the areas, placed his figures wholly within the lines of each parcel. It is contended that the map thereby indicated the traverse line as the eastern boundary of the several parcels, and not the center of Rock Creek, the actual boundary line. There is evidence to the effect that engineers would so read the map.

The fact is that the total of the parcels so surveyed aggregates 250 acres, measured to the creek bank, and that the total area embraced within the portion contracted to be conveyed is 258.66 acres. Nor does it appear that appellant was misled by the map. Furthermore, the record is silent as to any representation by respondents or their agents that the map was correct. (*Connell v. El Paso Gold Min. & Mill. Co.*, 33 Colo. 30, 78 Pac. 677.). The most that can be said for appellant, as to the map, is that it is ambiguous and sufficient to put him upon his inquiry in the event he thought he was contracting for 273.85 acres in gross, or for 250 acres of tillable land, requiring him to take timely action, which he did not do.

The original contract dated November 20, 1917, was subsequently modified as to the amount of the instalment payments, and, appellant being in default on September 1, 1923, respondent declared a forfeiture of the original contract pursuant to the terms thereof, the notice of forfeiture describing the lands exactly as described in the original contract. On April 1, 1924, respondent Alfred Page and appellant Parish entered into a lease of the premises, describing them as "all the land west of Rock Creek in Section 36, Township 9 South, of Range 16, East of Boise Meridian, containing two hundred seventy-three (273) acres more or

less." At the same time the parties entered into another contract, describing the land as described in the original contract, and declaring the said original contract "has not been changed, forfeited, or cancelled," and that the wives of the parties had signed the same to cure a defect therein. It also extended the time for payment and confirmed the amounts of the annual instalment payments, as changed by a contract dated March 2, 1923, required to be paid by appellant. It appears that the lease of the premises dated April 1, 1924, wherein the quantity of land is described as 273 acres, more or less, was not recognized by either party. It is not clear just what the object in making it was, but the whole record discloses that it was never considered by the parties as a binding lease, and that at its date and subsequent thereto appellant was in possession under the original contract of sale. Under the circumstances disclosed by this record, we do not think the mere fixing of the acreage at 273 acres, more or less, amounts to any representation that there was that much land contained in the tract.

When respondent sold the land in said section 36 lying east of Rock Creek he had it surveyed and the acreage in the easterly tract determined. Previously, he had obtained from the Twin Falls Canal Company 640 shares of its capital stock, which entitled the holder to 640 miner's inches of water for use on said section. To the purchaser of the land lying east of Rock Creek he transferred 366.15 shares of said water stock, that being the acreage in the parcel lying east of Rock Creek, and sold to appellant the remaining 273.85 shares as the water right going with the land lying on the west of Rock Creek in said section 36. In view of all the facts in evidence, this was not a representation that the number of acres in the tract west of Rock Creek equaled the number of shares of water stock that had not been sold with the tract lying east of Rock Creek.

Appellant was always, from the beginning, unable to meet his payments, and entered into negotiations with

respondent Alfred Page in September, 1925, whereby the land was sold by the Pages to a partnership known as the Burnett Brothers for the sum of $30,000, under contract dated September 22, 1925; and appellant and wife likewise contracted, on the same date, for the sale of their equity in said lands to said Burnett Brothers for $11,000. On October 10, 1925, respondent and appellant entered into a contract reciting three several contracts between the parties, including the agreement of November 20, 1917, and the desire to enter into the contract with Burnett Brothers, and agreeing that, in consideration of the payments already made by appellant and his wife, the said named contracts were thereby canceled and annulled; that Page was to keep all payments theretofore paid upon said contracts; and that Parish and wife should retain all rents, issues and profits theretofore received from said premises. This agreement further released and quitclaimed the premises, with the appurtenances, to respondent, and concluded with the following general release, to wit:

"The parties hereto do hereby mutually release each other from any and all claims, charges, or demands of whatsoever kind and nature, arising from or out of or by virtue of the agreements above described."

Conceding the rule to be that "a general release ordinarily includes all claims and demands then due and within the contemplation of the parties" (34 Cyc., p. 1090), and "consequently a demand of which the parties were ignorant when the release was given is not as a rule embraced therein" (34 Cyc., p. 1092), cited by appellant, we read further from the same authority:

"If, however, a demand falls within the fair terms of the release it is discharged thereby, whether or not it was contemplated by the parties, and whether or not they were aware of its existence." (34 Cyc., p. 1092.)

There is no contention that the release was procured by fraud or misrepresentation. Looking to the release itself and the facts and circumstances surrounding it, the claim upon which the present action is based falls within its terms (*Shannon v. Prall*, 115 Wash. 106, 196 Pac. 635), and, in

the absence of fraud in obtaining such general release, it will be sustained, even though the parties did not have in mind the alleged wrongs complained of (*Willett v. Herrick,* 258 Mass. 585, 155 N. E. 589 (593), or which were not disclosed or known (*Houston v. Trower,* 297 Fed. 558) when the release was signed. The finding to the effect that the present claim is barred by the release is therefore correct.

The court found, upon sufficient evidence, that appellant was a farmer of considerable experience and accustomed to buying, selling and farming large tracts of land; that he was in possession of and farming said premises continuously from the fall of 1917 until the fall of 1925; and that if there had been any misrepresentations as to the tillable acreage of said premises, appellant could have, and should have, discovered such misrepresentations in the year 1918 or 1919. The court concluded that appellant's cause of action was barred by reason of the provisions of C. S., sec. 6611, subd. 4, providing that an action for relief on the ground of fraud or mistake must be brought within three years, and that the cause of action shall be deemed to have accrued on discovery by the aggrieved party of the facts constituting the fraud or mistake. The evidence brings the case within the rule followed by this court that knowledge of facts that would put a reasonably prudent person on inquiry is equivalent to knowledge of the fraud, and will start the running of the statute. (*Williams v. Shrope,* 30 Ida. 746, 168 Pac. 162; *Stout v. Cunningham,* 33 Ida. 464, 196 Pac. 208; *Ryan v. Old Veteran Mining Co.,* 37 Ida. 625, 218 Pac. 381.)

In view of the conclusions reached, it is not deemed necessary to consider other questions raised by the assignments of error.

Judgment affirmed. Costs to respondents.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.