406 P.2d 341

Sydney V. HEATH and Florence Heath, husband and wife, Plaintiffs-Respondents,

v.

UTAH HOME FIRE INSURANCE COMPANY, Defendant-Appellant.

No. 9639.

Supreme Court of Idaho.

Oct. 6, 1965.

Baum, Peterson & Kugler, Pocatello, for appellant.

George W. Hargraves, Gee, Hargraves & Armstrong, Pocatello, for respondents.

TAYLOR, Justice.

On the 14th day of June, 1963, a dwelling house in Pocatello, belonging to plaintiffs (respondents) and covered by an insurance policy issued by the defendant (appellant), was damaged by a severe hail storm. Plaintiffs were the owners of five other houses in the same area. The house involved in this case was rented to Dan and Elma Hopkins. The day after the storm the tenants left the house for the summer and it remained vacant until they returned late in August. Plaintiffs notified the defendant company that the house had been damaged by the storm. Thereafter, on June 18, 1963, one Stanley Rue, an adjuster for defendant from the General Adjustment Bureau, called upon plaintiffs and, with Mr. Heath, inspected the roof of the dwelling, and subsequently prepared a proof of loss which was executed by Mr. Heath. At the time of the inspection Mr. Heath did not think of asking the adjuster to inspect the interior of the house, and the adjuster did not mention or suggest an examination of the interior. As a result, only the roof and the exterior were examined. The Heaths had a key to the house at the time.

July 2, 1963, defendant issued its draft in the amount of $134 to plaintiffs for the loss as shown by the proof submitted. The total loss was stated at $184, less $50 deductible by the term of the policy. The draft which was accepted, endorsed and cashed by the plaintiff Heath, recited on its face:

"In full settlement for loss or damage which occurred on June 14, 1963, under 'Fire-Extended Coverage Policy No. DI 68467."

and on its reverse side:

"Endorsement of this draft is acknowledgment of full payment and dis-

charge of all claims and demands for loss and damage under the policy of insurance as set forth on the face of this draft, in consideration whereof the said policy is hereby: Reinstated subject to the terms and conditions of said policy."

Mr. Heath was aware of this release when he endorsed the draft.

When the tenants returned in August they discovered that the interior of the house had been extensively damaged by the storm, and so advised plaintiffs. At plaintiffs' request Mr. Rue again came to the premises and examined the interior of the house. After obtaining bids for the repair of the damage to the interior, Mr. Rue prepared a supplemental proof of loss, which was executed by Mr. Heath, showing an additional loss to the house in the amount of $360. In his supplemental report, the adjuster stated:

"The initial inspection was made with the owner of the dwelling, on the roof only. The tenants were gone for the summer so we had no access to the interior. The tenants came back two weeks ago and upon entering the house were faced with parts of the above ceilings laying on the floor and hanging from the ceiling joists. We have made a thorough re-inspection and have obtained figures from two contractors and believe this to be a fair and just claim, and recommend supplemental payment."

In its letter rejecting the supplemental claim, the defendant stated:

"We received a supplemental report dated September 12, 1963 on a loss which happened June 14, 1963 in your town. We wish to advise you that we do not intend opening up these claims at this late date and cannot understand why your adjuster did not complete his inspection when he was at the property shortly after the loss.

"I do not know what kind of adjusters you have that would not anticipate or understand that with the roof being off that there would be damage to the interior of the building.

"If these adjusters you have are on the roll for the General Adjustment Bureau to adjust more claims in this area, if they cannot do the job properly, then you should advise us and we will send adjusters up there that can do the job correctly. We are returning these supplemental papers, proof of loss, and suggest your adjuster inform the assured."

Plaintiffs brought this action for recovery of the principal amount of the supplemental claim with interest, and for attorney's fees, as provided by I.C. § 41–1839. The cause was tried to the court sitting without a jury.

Defendant brought this appeal from judgment for the plaintiffs for the amount of the supplemental claim and $250 attorney's fees and costs.

Defendant assigns as error the following findings of the trial court:

"4. At the time of the first visit of the adjuster neither the plaintiff nor the adjuster had any reason to anticipate damage to the interior of the building."

Appellant contends that this was not supported by the evidence, since the damage was shown to have been so heavy that respondent should have anticipated damage to the interior.

"7. Plaintiffs cooperated fully with the defendant's agents and fulfilled all obligations required of them under the policy."

Appellant contends that this finding is in error because it was the obligation of respondents to call to the adjuster's attention all damages suffered on their premises before signing a proof of loss and before accepting a draft in full payment which contained a full release.

"8. Plaintiffs executed a release for payments for the exterior damage, but at the time the release was given a substantial injury existed which was unknown to both parties and not within the contemplation of the parties."

The finding is objected to for the reason that the interior damage to the premises should have been anticipated and respondents should not have accepted the draft, executed the release, without determining the extent of the damage to the entire property, including the interior.

Defendant also assigns as error the court's conclusion of law No. 1, reading as follows:

"1. The release was given under a mutual mistake of a material fact, and the release is therefore avoided and set aside."

Defendant contends that the release, having been obtained without fraud or misrepresentation, is conclusive, even though the parties did not have in mind the wrongs complained of or which were not disclosed or known when the release was signed.

Defendant also assigns as error the failure of the court to hold that plaintiffs could not maintain the action without tendering restitution of the amount paid to them on the original proof of loss, as a condition precedent.

Defendant's basic contention is that the trial court erred in allowing plaintiffs to avoid the release on the ground of mutual mistake.

With exceptions therein noted the general rule governing avoidance of contract on the ground of mutual mistake is stated in 2

Restatement of Contracts (1932), § 502, as follows:

" * * * where parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be, * *."

Both parties cite Parish v. Page, 50 Idaho 87, 293 P. 979 (1930). In that case the plaintiff (purchaser) brought the action for damages alleged to have resulted from defendant's (seller's) fraudulent misrepresentation as to the number of acres of land in the tract sold. The purchaser went into possession in the fall of 1917 when the contract was executed. The contract was modified in March, 1923, liberalizing the terms of the original agreement in favor of the purchaser; the parties joined in a lease of the premises to a third party in 1924; the land was sold by the sellers to a third party purchaser in 1925; and thereafter in October, 1925, the parties entered into a contract rescinding their previous contracts. This last agreement contained a mutual general release by each to the other of all claims arising out of the mentioned transactions. Concerning release, the court said:

"Conceding the rule to be that 'a general release ordinarily includes all claims and demands then due and within the contemplation of the parties' (34 Cyc. p. 1090), and 'consequently a demand of which the parties were ignorant when the release was given is not as a rule embraced therein' (34 Cyc. p. 1092), cited by appellant, we read further from the same authority: .

" 'If, however, a demand falls within the fair terms of the release it is discharged thereby, whether or not it was contemplated by the parties, and whether or not they were aware of its existence.' 34 Cyc. p. 1092.

"There is no contention that the release was procured by fraud or misrepresentation. Looking to the release itself and the facts and circumstances surrounding it, the claim upon which the present action is based falls within its terms (Shannon v. Prall, 115 Wash. 106, 196 P. 635), and, in the absence of fraud in obtaining such general release, it will be sustained, even though the parties did not have in mind the alleged wrongs complained of (Willett v. Herrick, 258 Mass. 585, 155 N.E. 589, 593), or which were not disclosed or known (Houston v. Trower [10 Cir.] 297 F. 558) when the release was signed. The finding to the effect that the present claim is barred by the release is there-

fore correct." 50 Idaho at 94 and 95, 293 P. at 982.

In that case the court held the alleged fraud had not been established and, in resolving the issue, further said:

"The court found, upon sufficient evidence, that appellant was a farmer of considerable experience and accustomed to buying, selling, and farming large tracts of land; that he was in possession of and farming said premises continuously from the fall of 1917 until the fall of 1925; and that if there had been any misrepresentations as to the tillable acreage of said premises, appellant could have, and should have, discovered such misrepresentations in the year 1918 or 1919. The court concluded that appellant's cause of action was barred by reason of the provisions of C.S., § 6611, subd. 4, providing that an action for relief on the ground of fraud or mistake must be brought within three years, and that the cause of action shall be deemed to have accrued on discovery by the aggrieved party of the facts constituting the fraud or mistake. The evidence brings the case within the rule followed by this court that knowledge of facts that would put a reasonably prudent person on inquiry is equivalent to knowledge of the fraud, and will start the running of the statute." 50 Idaho at 95, 293 P. at 982.

Thus, it is apparent that the decision was not primarily based upon the effect of the release. In holding that the plaintiff should have discovered any misrepresentation as to acreage, the court called attention to the plaintiff's long occupancy of the premises and his prior experience in such dealings.

In this case it does not appear that plaintiffs had had any previous experience involving damage to buildings by hail, and the evidence shows that no damage was suffered to the interior of any of the other houses owned by them in the area. The defendant had had experience with similar damages. This is evidenced by defendant's letter placing the blame upon the adjuster.

In the Parish case there were equities in favor of the sellers which were to be taken into consideration in support of the release. The long delay on the part of the purchaser, and the change of position on the part of the sellers, were sufficient grounds for upholding the release.

In this case the plaintiffs' claim was not stale, the defendant had not changed its position in reliance upon the release, and avoidance of the release resulted in imposing upon the defendant only the obligation which it had assumed by its contract.

█ The evidence supports the finding of mutual mistake and that the damage to the interior of the house was not known to, nor in the contemplation of, either party at the time of the release.

Estes v. Magee, 62 Idaho 82, 109 P.2d 631 (1940), was an action for damages for personal injury to a patient while hospitalized. After having signed a release, the patient discovered additional injury for which the action was brought. This court there said:

"The applicable rule generally recognized and followed is that a release induced by the fraudulent, or mistaken though honest, statements by a physician representing the releasee, as to the present nature or circumstances of an injury is not binding on the releasor." 62 Idaho at 91, 109 P.2d at 634.

Casey v. Proctor, 59 Cal.2d 97, 28 Cal. Rptr. 307, 378 P.2d 579 (1963), concerned an action brought for personal injuries which became known to the plaintiff after he had executed a general and specific release in favor of the insurance carrier of the automobile owner who had negligently caused his injury. The release was given upon payment to plaintiff of the amount of damages to his automobile inflicted when the insured driver drove into the rear of plaintiff's automobile. Plaintiff thereafter discovered that he had sustained a ruptured cervical disc, occasioning damage in the amount of $3000. The plaintiff contended that his action was not barred by the release, because of a statute (West's Ann.Cal.Civ. Code § 1542) which provided in effect that a general release did not extend to a claim which was not known to, or suspected by, the creditor at the time of the execution of the release. The district court of appeals had held the release effective because it specifically included all claims "known and unknown * * * resulting or to result" from the accident. The Supreme Court of California reversed the decision, holding that, where the release was not obtained or induced by any misconduct on the part of the releasee, if it was executed by the releasor at a time when he neither knew nor suspected that he had suffered personal injury, and if his failure to discover or suspect additional injury, or to recognize that the release included a discharge of such liability, was not due to negligence on his part, his subsequent claim was not barred by the release. The release form was sent to the releasor by mail. There were no negotiations for the release. Nothing was paid on account of personal injury. The court noted that these facts tended to indicate that the releasor did not intend to release an unknown claim. In that case the California court further said:

"In the absence of statutory provision, the majority of jurisdictions permit a releaser under proper circumstances to avoid a release, regardless of its terms, where it appears that unknown injuries existed at the time it was executed." 28 Cal.Rptr. at 315, 378 P.2d at 587.

In support of the foregoing statement, the court collected and cited authorities from other jurisdictions, and further said:

"Although most of the decisions are couched in terms of 'mutual mistake,' this rationale does not satisfactorily explain the case holdings. Invariably, the release has been drafted by the releasee in terms sufficiently broad to include a discharge of liability for unknown injuries. While the releasee is ignorant of the existence of injuries, he is also indifferent to their existence. He seeks a discharge of liability in any event, and it cannot be said that he would not have entered into the release had he actually known of them.

"There are competing policies involved. On the one hand, the policy of the law is to encourage out-of-court settlements. To further this policy the parties to a dispute should be encouraged to negotiate settlements and to enter in releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. If later discovered injuries may be asserted, no release would be final and free from attack until the statute of limitations has run. (Citations.) On the other hand, if the releaser is bound by the literal terms of the release, it has been recognized that he is left to suffer personal injuries without compensation, while the releasee, who usually is an insurer, has received a windfall in avoiding liability for a risk it has been paid to assume." 28 Cal.Rptr. at 315, 378 P.2d at 587.

See also, Sloan v. Standard Oil Co., 177 Ohio St. 149, 203 N.E.2d 237 (1964).

■ Since plaintiffs were entitled to retain the amount paid to them in satisfaction of the first proof of loss, regardless of whether the release was avoided, they were not required to tender return of the amount received as a condition to the maintenance of this action. Estes v. Magee, 62 Idaho 82, 109 P.2d 631 (1940); Casey v. Proctor, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 (1963).

■ Pursuant to the provisions of I.C. § 41–1839, and plaintiffs' motion therefor, plaintiffs are awarded the sum of $250 by this court as a reasonable attorney's fee on this appeal. Molstead v. Reliance National Life Insurance Company, 83 Idaho 458, 364 P.2d 883 (1961); Halliday v. Farmers Insurance Exchange, 89 Idaho 293, 404 P.2d 634 (1965).

The judgment appealed from is affirmed. The district court is directed to add the amount of the attorney's fee, herein award-

ed plaintiffs, to the judgment against defendant.

Costs to respondents.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.