MR. JUSTICE SHEEHY,
dissenting:
I dissent from the foregoing Opinion, which is a decidedly minority view of the courts which have passed upon the question here presented.
Just as important, we should take this opportunity to stop what is apparently a dastardly practice by State Farm, that is, procuring *278 from its Montana insureds releases which purport to be final in form, but which allow for medical bills incurred for the next six months, not exceeding $3,000 in total, but deny the insureds any further right to recover either for pain or suffering or permanent harm as shown by the future bills.
Most pointedly, State Farm acquired this release without discussion given to its insured to explain the meaning of the release either to the unknown injuries, or to the application of the future medical benefits.
Finally, the majority has overlooked or chosen not to discuss the ramifications of the adjuster here obtaining a doctor’s report concerning the insured from her doctor, and never disclosing to the insured what that doctor’s report contained prior to obtaining her signature on the release.
When an insurer presents a release to an injured party, the insurer has a duty, if the release contains a reference to unknown injuries, to explain particularly the significance of that clause to the proposed releasee:"
“Where a release is given with reference only to known injuries, and it subsequently develops that a substantial injury then existed which was unknown to the parties and not taken into consideration, the release may be avoided on the grounds of a mutual mistake. This is true even though the instrument contains a clause, not the subject of express bargaining, that the release shall apply to all unknown and unanticipated injuries. Where an injured person, not knowing that the accident had caused a certain injury, signed a release tendered by the insurer of the person causing the injury, and unknown to the releasor the release contained a clause which related to unknown injuries and to conditions which might thereafter develop, the release was not binding as to the unknown injuries. If the person who induced the releasor to sign the release did not know of the clause relating to unknown injuries, the case presented a mutual mistake of fact. And if the person who tendered the release for signing knew of the clause and knew that the releasor was not aware of the clause, he had a duty to inform the releasor of the existence of the clause.”
66 Am.Jur.2d 694, 694, 695, Release, Section 20.
In Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 606 P.2d 520 and McCloskey v. Porter (1973), 161 Mont. 307, 506 P.2d 845, wé were governed by the intent of the parties as to the release in reaching our decisions. In every case where a release is obtained *279 by an insurer which contains reference to unknown injuries, intent is an issue, and one about which the court must specifically make a finding. Although a releasee may, if he intends to do so, release any rights respecting future injuries, he should not be bound by any release which signs away those future rights without any discussion or without the intent of the releasee. That is the majority view:
“As previously noted, there are essentially two lines of authority which have developed around similar cases in other jurisdictions. The line followed in a small minority of jurisdictions is typified by the Oregon case of Wheeler v. White Rock Bottling Company, 229 Or. 360, 366 P.2d 527 (1961). In Wheeler, the court adhered to traditional conceptions regarding contract law, and held a release binding upon a pregnant woman with subsequently discovered back injuries. While this case is not directly in point as the plaintiff in that case was aware of some back pain which her physician may have thought pregnancy originated, it does illuminate the inflexible and dogmatic approach of some courts. In their considerations of the validity of general liability waivers, these jurisdictions appear not to differentiate between standards applicable to commercial transactions and those peculiar to personal injuries. See generally, Annot. Section 15, 71 A.L.R.2d 82, 167-69 (1960).
“The better reasoned rule adopted by an overwhelming majority of jurisdictions permits the avoidance of a release in circumstances where later discovered injuries were clearly not contemplated by the parties at the time of release. A reasonably succinct statement of this line of authority is set forth by the California Supreme Court in Casey v. Proctor, 59 Cal.2d 97, 112-113, 28 Cal.Rptr. 307, 378 P.2d 579 (1963):
“ ‘Under the majority rule, however, a release may not ipso facto be avoided upon the ground of later discovered injuries. The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability . . .’ ”
Finch v. Carlton (1974), 84 Wash.2d 140, 524 P.2d 898, 900.
We should look to our sister state of Idaho, which in Ranta v. Rake (1967), 91 Idaho 376, 421 P.2d 747, pointed out that the liberal policy of avoiding releases where there are unknown injuries is guided by the following factors:
“(a) the peculiar dignity the law accords the human person as distinguished from articles of commerce; (b) the very real possibility of being mistaken about the long range effects of damage to human *280 tissue; (c) the inequality of the bargaining positions of the contracting parties; and, (d) the amount of consideration received compared to the risk of the existence of unknown injuries.”
421 P.2d at 751.
In addition to the foregoing factors, the State of Washington added the haste, or lack thereof, with which the release was obtained.
Finch, 524 P.2d at 901.
Moreover, we should direct our attention to the kind of release that was taken by State Farm in this case. This was a case where State Farm represented as an insurer both the responsible party, Mary Oljar, and the injured party, Ethel Hanson. Each were operating automobiles which were insured at the time by State Farm Mutual Automobile Insurance. A special duty in that situation devolved upon State Farm to be fair and equitable in its handling of the claims as between its two insureds. It is not disclosed in the record whether the car driven by Ethel Hanson in this case provided coverage, separate from the other coverages, for medical payments to those persons injured in the operation of the Hanson automobile. If it did, the form of release taken by State Farm was even more reprehensible. A copy of the release taken from Ethel Hanson is shown in the exhibit 1 attached to this Dissent. It will be seen that in addition to the monies paid by State Farm under the term of the release, there was in addition a printed schedule of benefits in which State Farm agreed to pay an amount not to exceed $3,000 for medical, dental or surgical treatment furnished to the releasee within six months following the date of the agreement, as a result of the accident described, excluding expenses paid by any collateral source. In this case, State Farm, being in possession of the doctor’s report, and Ethel Hanson, not being in possession of it, tendered the release by including in it what is essentially a health and accident insurance form providing for future medical benefits. The evil in the form is that though the releasee may have recovered up to $3,000 for future medical expenses, the release would preclude, and by the holding of the majority here, does preclude, any further recovery for permanent injuries, pain and suffering or other elements of damages that might accrue to the releasee by virtue of the accident. Absolutely nothing about this feature of the release was discussed or pointed out by the adjuster to Ethel Hanson. If procurement of such a release is a practice of State Farm, and the printed form indicates it Is, this Court should condemn that practice right now.
I would reverse this case under the present state of the evidence. I *281 would remand it to the District Court for further proceedings to determine the intent of the releasee at the time the release was signed, and recognize the release only to that extent.
MR. JUSTICE HUNT concurs in the foregoing dissent.
*282 [[Image here]]